JOHN B. OGDEN, NEW JERSEY CIVIL SERVICE ASSOCIA-
TION AND PASSAIC COUNCIL NUMBER THREE, NEW
JERSEY CIVIL SERVICE ASSOCIATION, PLAINTIFFS-
APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE OF
THE STATE OF NEW JERSEY AND PASSAIC VALLEY
WATER COMMISSION, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1962—Decided December 7, 1962.

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. Max A. Boxer* argued the cause for appellant John B. Ogden.

*Mr. Irving I. Rubin* argued the cause for appellants New Jersey Civil Service Association and Passaic Council Number Three, New Jersey Civil Service Association.

*Mr. William L. Boyan,* Deputy Attorney General, argued the cause for respondent Department of Civil Service of the State of New Jersey (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Newton M. Roemer* argued the cause for respondent Passaic Valley Water Commission (*Mr. Benjamin J. Spitz,* attorney).

The opinion of the court was delivered by

KILKENNY, J. A. D.   John B. Ogden, New Jersey Civil Service Association and Passaic Council Number Three, New Jersey Civil Service Association, appeal from the final decision of the Department of Civil Service, reclassifying the position of General Superintendent and Chief Engineer of the Passaic Valley Water Commission from the classified into the unclassified division.   Mr. Ogden is the Assistant General Superintendent.

The Passaic Valley Water Commission was organized pursuant to *R. S.* 40:62–109 to 40:62–150 by the cities of Clifton, Passaic and Paterson.   It has been in existence at least since 1933.   It supplies water not only in the three cities which organized it, but also in a number of nearby municipalities.   The Commission owns a 37¾% interest in the North Jersey Water Supply District which operates the Wanaque Reservoir.   To meet increasing needs its works and distribution system have been expanding.   It is presently developing a reservoir at Pancake Hollow.   The North Jersey

Water Supply District is considering whether to bring water from the Round Valley Project to be picked up at Round Valley or from the Raritan River.

The Passaic Valley Water Commission is a board of four commissioners, of whom two are appointed by the city of Paterson and one each by the cities of Clifton and Passaic. The commissioners are not required to have technical training in water·distribution and the present commissioners have none. No commissioner is an engineer. They do not serve full time as water commissioners and each has another responsible private position.. While the Commission is the governing body, its role is essentially dependent upon expert guidance and advice, particularly that of the General Superintendent and Chief Engineer, both in matters of administration and engineering. The Water Commission has 284 employees, and in the organization chart the General Superintendent and Chief Engineer is the head of the Operating Division, which includes all but five of the employees.

For many years, the employees of this Water Commission were not subject to Civil Service. Then, *L.* 1949, *c.* 289 (*N. J. S. A.* 40:62–150.1 and 150.2) was adopted. It provided that the Water Commission "shall, upon written petition * * * signed by a majority of the employees of said water commission employed by it on the effective date of this act, certify to the Civil Service Commission the names of all those employees," and upon such certification "the Civil Service Commission shall classify, without examination, the employees so certified in the classified service and such employees shall thereafter be subject to all the provisions" of the Civil Service Law with respect to tenure, classification and compensation. Such a petition was filed by the employees and the Water Commission so certified to the Civil Service Commission on July 23, 1949. From that date the employees of this Water Commission have received the benefits of and been subject to the provisions of the Civil Service Law.

Richard E. Bonyun had been employed as General Superintendent and Chief Engineer of the Water Commission since

November 1, 1944, and he continued therein until his retirement effective January 1, 1962. Thus, he had tenure following the acceptance of Civil Service and the position had been placed in the classified service by the Civil Service Commission. The employees were classified under approximately 80 Civil Service titles.

Mr. Bonyun indicated to the Water Commission in the early part of 1961 that he intended to retire. In May 1961 he became quite ill, was hospitalized and underwent an operation. He gave notice that he would retire on January 1, 1962. The Water Commission regarded this job as important, complex in nature, unique, and one which could not be filled by examination. It began to look around for a successor. The Commissioners interviewed eight or more engineers recommended to them by the executive director of the American Water Works Association. They felt that the qualifications needed for their General Superintendent and Chief Engineer were possessed by Mr. Charles Bourgin, who had been recommended by the American Water Works Association and who was performing a somewhat comparable job for the East Orange Water Commission.

On July 21, 1961 the Water Commission addressed a communication to the Civil Service Commission requesting that the position of General Superintendent and Chief Engineer be placed in the unclassified service because the present incumbent was retiring, his replacement was needed immediately, and the position was the top executive and policy settling authority of the Water Commission and could not be filled by examination. The Civil Service Commission considered this request at its October 3, 1961 meeting and unanimously agreed and directed that the position be placed in the unclassified division under the provisions of *N. J. S. A.* 11:22–2(*o*).

*N. J. S. A.* 11:22–2(*o*) provides:

"The unclassified service shall not be subject to the provisions of this subtitle and shall include the following:
\*          \*          \*          \*          \*          \*          \*          \*

o. Such other officers and positions not now included in the un-
classified service by this section or by any other statute, as the Civil
Service Commission shall, from time to time, determine, according to
law, to be in the unclassified service."

The action taken by the Civil Service Commission at its
October 3, 1961 meeting was protested in a letter received by
it from William Price, president of the New Jersey Civil
Service Association, because of the Commission's failure to
comply with the provisions of *N. J. S. A.* 11:22–52.

*N. J. S. A.* 11:22–52 requires the holding of a public hear-
ing before a position in the classified service may be put in
the unclassified service, "to determine whether or not it is
practicable to determine merit and fitness for appointment
or promotion to such position by means of competitive or
other examination or on the basis of minimum qualification
requirements thereof and if it shall be determined that it is
not practicable so to do, [the Civil Service Commission]
shall record and publish its findings in which it shall state
the basis upon which such determination is made and, there-
after, such position shall be in the unclassified service * * *."

Realizing its inadvertence, the Civil Service Commission
held a public hearing on November 9, 1961 at which all the
parties herein were present and represented by counsl and
participated in the proceedings. The only witnesses who
actually testified were Joseph A. Abbott, president of the
Passaic Valley Water Commission, and A. R. Mangione,
Director of Classification, Municipal Service, of the Depart-
ment of Civil Service. However, it was stipulated that Com-
missioner DeNooyer of the Water Commission, who was
present, would, if called, testify substantially as Mr. Abbott
had testified; and that Benjamin J. Spitz, general attorney
for the Water Commission, also present, on the basis of his
22 or 23 years' experience with the Commission, would de-
scribe the details of the confidential relationship between the
Commission and its General Superintendent and Chief Engi-
neer, as had been covered by Mr. Abbott in his testimony.

Following the public hearing, the Commission decided

"that it is not practicable to determine merit and fitness for the position of General Superintendent and Chief Engineer of the Passaic Valley Water Commission on the basis of either a competitive or non-competitive examination nor by a requirement of minimum qualifications therefor, and concludes that the position should be in the unclassified service under R. S. 11:22–2(o)."

In its formal decision, the Civil Service Commission made these findings as the basis for its determination. The General Superintendent and Chief Engineer is the highest ranking full-time position in the employ of the Passaic Valley Water Commission and is answerable only to the four commissioners, whose role is analogous to that of a governing body. Since the commissioners themselves serve only part time in the role of trustees and lack technical training, they necessarily rely upon him for guidance. He advises the commissioners on the regular operations of the Commission, on the budget of the North Jersey Water Supply District, and on the need for and feasibility of expansion. He works with them and the bonding attorneys in determining what rates will be necessary to pay off the bonds, and whether such rates are feasible. He is the representative of the Commission in dealing with the officials of the many other municipalities in which the Water Commission supplies water.

The Civil Service Commission took note of the many and complex duties and required abilities of the General Superintendent and Chief Engineer, as set forth in its own specifications for the job drawn up on December 12, 1950 and which Mr. Mangione, Director of Classification, testified "was written specifically for the Passaic Valley Water Commission because it was a different type of organization." The Commission also found, as shown by the organization chart received in evidence, these further facts:

"Although there are three divisions, Executive, Operating and Legal, almost all of the functions are concentrated in the Operating Division which is headed by the General Superintendent and Chief Engineer. There are only two employees in the Executive Division and three in

the Legal Division. In all, there are 284 employees of the Commission. Subtracting the four commissioners, this leaves 275 employees in the Operating Division. The Operating Division contains the following six departments: Commercial, Service, Engineering, Distribution and Transmission, Purification and Water Shed, and Pumping and Maintenance. The 284 employees of the Commission hold approximately 80 civil service titles. From 1949 until the present only the four commissioners themselves have been in the unclassified service."

The Civil Service Commission concluded that the position in issue was analogous to that of head of a municipal department, placing reliance upon our decision in *Milton v. Department of Civil Service*, 71 *N. J. Super.* 135 (*App. Div.* 1961), in which we held that the Superintendent of Public Properties of Scotch Plains was the "head of a department" within the meaning of *N. J. S. A.* 11:22–2(d) and thus in the unclassified service. It noted that the employee there had direct charge of the maintenance and repair of all streets, sewers and drainages, shade trees, municipal buildings, parks, bridges and other like township operations. He, too, was answerable only to the governing body. The Commission felt that the responsibilities of the General Superintendent and Chief Engineer of the Passaic Valley Water Commission were at least as grave as those of the Superintendent of Public Properties of Scotch Plains, who had charge of only 55 employees as compared with 275 Water Commission employees. Also, the area and population served by the Water Commission were much larger than those of Scotch Plains.

Further, the Civil Service Commission considered "the sensitive relationship between the General Superintendent and Chief Engineer and the members of the Passaic Valley Water Commission arising out of the reliance which they must place on his judgment and recommendations on all important matters coming before the Commission." It also took into account the extent to which he represents the Water Commission in dealing with elected and other officials of municipalities not represented on the Commission. It observed that "no General Superintendent and Chief Engineer

of the Passaic Valley Water Commission has ever been hired as a result of the competitive Civil Service process."

For all of the above reasons, the Civil Service Commission concluded that it was not practicable to determine merit and fitness for this position by examination or minimum qualification requirements, and that the position should be in the unclassified service under *N. J. S. A.* 11:22-2(*o*).

The evidence justifies the findings of fact made by the Commission. The testimony by Joseph A. Abbott, president of the Water Commission and member thereof for four years before the hearing, stands uncontradicted and supports the finding that the position in question is a very complex and unique type of job, in which great reliance is placed by the Water Commission upon the guidance and advice of the General Superintendent and Chief Engineer. Abbott testified that it is impracticable to fill this job through a civil service examination of any type. There was no testimony to the contrary. He stressed the complexity and uniqueness of the job by pointing out that the Commission needs for this position someone who is an expert in engineering, administration, fiscal policies, expansion programs, personnel problems and public relations, as well as a person in whom the Commission can place confidence and upon whom the Commissioners must lean heavily for advice and guidance in settling matters of policy.

The scope of our appellate review is quite limited in this type of case. So long as the factual findings of the administrative agency are supported by substantial evidence on the whole record, we shall not disturb them. *Atkinson v. Parsekian,* 37 *N. J.* 143, 149 (1962); *Hornauer v. Division of Alcoholic Beverage Control,* 40 *N. J. Super.* 501, 504 (*App. Div.* 1956). In this case, the facts are undisputed. The real issue is whether on the basis of those facts it would be "practicable" to determine merit and fitness for appointment to this rather complex and somewhat unique position either by examination or minimum qualification requirements. The Civil Service Commission decided that it was

not practicable to do so. The expertise of the Commission in matters of this kind is entitled to much weight. *Flanagan v. Civil Service Department,* 29 *N. J.* 1, 9 (1959).

The discretion vested by the Legislature in the Civil Service Commission by *N. J. S. A.* 11:22–2(*o*), to change a position from the classified to the unclassified service upon making the finding required by *N. J. S. A.* 11:22–52, may not be interfered with by the courts in the absence of a showing that the action of the Commission was arbitrary or unreasonable.

"Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. They may decide a particular question wrong—but it is their question. [They are] vested with a high discretion, and its abuse must appear very clearly before the courts will interfere." *Maxwell v. Civil Service Commission,* 169 *Cal.* 336, 146 *P.* 869 (*Sup. Ct.* 1915), quoted with approval in *Flanagan v. Civil Service Department,* 29 *N. J.* 1, 12 (1959), and in *Brotspies v. Dept. of Civil Service, N. J.,* 66 *N. J. Super.* 492, 497 (*App. Div.* 1961).

See, too, *Falcey v. Civil Service Commission,* 16 *N. J.* 117, 123 (1954); *Kaplan, The Law of Civil Service, pp.* 153–154 (1958); Stason, "Substantial Evidence in Administrative Law," 89 *U. Pa. L. Rev.* 1026, 1038 (1941); Stern, "Review of Findings of Administrators, Judges and Juries; A Comparative Analysis," 58 *Harv. L. Rev.* 70, 89 (1944).

■ We find substantial evidence in the record to support the findings and conclusions reached by the Civil Service Commission. The challenged decision is neither arbitrary nor unreasonable. The appellants submit a fair argument in support of their position and reasonably differ with the Civil Service Commission as to the action taken. But fair argument or reasonable difference of opinion is not enough to disturb the decision reasonably made herein by the Civil Service Commission. Even "Doubts held by the court as to the wisdom of the administrator's decision do not alter the case." *Flanagan v. Civil Service Department, supra,* 29 *N. J.,* at *p.* 12. The Commission is especially equipped by reason of its experience to decide whether it is practicable for it to deter-

mine merit and fitness for this position. Its determination that it is not practicable merits our respect. We find no basis for overturning that decision and substituting our judgment for that of the state agency charged by the Legislature with administering the Civil Service Law.

The judgment is affirmed.